U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAY 19 2015

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MICHAEL JETT (#337652) | DOCKET NO. 15-CV-215; SEC. P |
| VERSUS | JUDGE TRIMBLE |
| TIM KEITH, ET AL. | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Pro se Plaintiff Michael Jett filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 30, 2015. Plaintiff is an inmate in the custody of the Louisiana Department of Corrections ("DOC"), and he is incarcerated at the Winn Correctional Center ("WNC") in Winnfield, Louisiana. Plaintiff complains that he has been denied adequate medical care and subjected to unconstitutional conditions of confinement and/or cruel and unusual punishment. He names approximately twenty-nine defendants.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### Factual Allegations

Plaintiff filed an original complaint totaling approximately 258 pages, with exhibits, alleging that he has been denied proper medical care and forced to work at a job that causes him to suffer physical pain. He claims that he suffers pain in his back, hips, legs, feet, and heels, as well as poor blood circulation in his hands, fingers, and arms. [Doc. #1, p.19] He was ordered to amend

his complaint to provide specific information including the name of each person who ignored his duty status of August 13, 2013, which provided for no repeated bending, stooping, or squatting; no heavy lifting; and no sports; the dates on which his duty status of 8/13/13 was ignored, requiring him to do work beyond the limitations provided in the duty status; what he was required to do that violated the duty status; and, what injury Plaintiff suffered as a result of having to work beyond his limitations.

    Plaintiff's amended complaint is mostly illegible and unintelligible, and is non-responsive to the Court's order. Plaintiff lists various case names and citations in the margins, and repeatedly writes "deliberate indifference" and "under color of state law" rather than providing the factual information that the Court ordered him to provide. He states that he missed a meal on September 19, 2013. He states that he was denied a wheelchair on September 19, 2013. He states that he was insulted by LPN Gaskill. Plaintiff sates that he was wrongfully written up on March 15, 2015, and placed in isolation. He states again that he is being forced to work, which causes his pain. He claims that he is being abused because of his race.

    Because Plaintiff's complaint is mostly illegible and unintelligible, the undersigned considers Plaintiff's medical treatment as summarized in the responses to his grievances. [Doc. #1, p.24-25] Plaintiff was evaluated on intake at WNC on October

15, 2012, where he reported a history of bilateral tendonitis. He had been prescribed gabapentim 100mg at Hunt Correctional.  [Doc. #1, p.24]  On October 18, 2012, Plaintiff was examined by Dr. Kuplesky, who prescribed Percogesic twice daily for three months.  [Doc. #1, p.24]  On November 11, 2012, Plaintiff continued to complain of pain, so Dr. Kuplesky changed the Percogesic to Mobic 15mg for six months and Ultram (tramodol) 50mg twice daily for two weeks.  [Doc. #1, p.24]

Plaintiff complained of pain again on January 2, 2013, requesting a refill of Ultram.  The nurse put Plaintiff on a call-out list, but he failed to show for his appointment with the Nurse Practitioner.  [Doc. #1, p.24]  On January 25, 2013, Plaintiff was treated by Nurse Fobbs, at which time he made another request for Ultram, rather than Mobic.  No abnormalities were noted in the physical assessment, so Plaintiff was referred to the doctor.  [Doc. #1, p.24]

On March 11, 2013, Plaintiff complained of pain again, and was seen by LPN Jones at sick-call.  No abnormalities were noted.  Plaintiff saw Dr. Kuplesky on March 21, 2013.  The doctor ordered prednisone treatment for seven days.  On April 1, 2013, Plaintiff was seen by RN Fitzgerald, with complaints that the prednisone was not helping.  NP Richardson was consulted, and shoe insoles were provided to Plaintiff.  He failed to show for an April 21st appointment.  On April 28, 2013, Plaintiff was examined by LPN

Fobbs for complaints of back pain while working in the kitchen, pulled muscle in leg, and tendinitis. No abnormalities were noted. Plaintiff ask to be sent to an outside doctor and for a Tramadol prescription. Plaintiff was offered Percogesic, but he refused that medication. [Doc. #1, p.24] Plaintiff appeared for sick call again on May 2, 2013, and he was examined by LPN Fobbs. Plaintiff complained of back, hip, leg, and foot pain. No abnormalities were noted. Plaintiff requested medication stronger than Mobic. He was referred to Dr. Kuplesky. [Doc. #1, p.24] On May 8, 2013, Dr. Kuplesky discontinued Mobic, per Plaintiff's request, and prescribed Neurontin 300mg twice daily for three months, as well as a one-week lay-in pass. [Doc. #1, p.24] On May 21, 2013, Plaintiff requested another lay-in pass. Physical examination showed that Plaintiff could bend fully at the waist, turn and twist at waist, and no abnormalities were noted. On May 29, 2013, Plaintiff was seen by Dr. Kuplesky who ordered Ultram 50mg twice daily for two weeks. [Doc. #1, p.24]

On June 28, 2013, Plaintiff complained of foot and leg pain. No abnormalities were noted. Analgesic balm was offered, which Plaintiff refused. On July 16, 2013, Plaintiff refused sick call. On July 19, 2013, Dr. Kuplesky ordered Ultram 50mg twice daily for two weeks. On August 6, 2013, Plaintiff complained of severe tendinitis pain, informing the RN that he only gets relief from Ultram. He was referred to Dr. Singleton who ordered Ultram 50mg

4

twice daily for three months. On August 10, 2013, Plaintiff presented at the infirmary demanding a wheelchair. No acute distress was noted, so he was instructed to make a sick-call. [Doc. #1, p.25] On August 13, 2013, Plaintiff was seen in sick-call by LPN Gaskill. No acute distress or abnormalities were noted. Dr. Singleton authorized a duty status for no repeated bending, stooping, or squatting; no heavy lifting; no sports. [Doc. #1, p.25] Plaintiff made another sick call for back, side, and leg pain on August 25, 2013. Plaintiff complained that the kitchen staff was not honoring Plaintiff's duty status. The nurse issued a lay-in for another week. Then, on September 19, 2013, Plaintiff received another seven-day lay-in pass.

The documents reflect that, as of January 20, 2014, Plaintiff had been removed from the kitchen and placed on restricted duty status based on his medical and mental health restrictions. [Doc. #1, p.50]

According to additional documents submitted by Plaintiff, he was issued a walker on February 1, 2014. [Doc. #1, p. 19] He was treated by a psychologist at WNC on February 22, 2014, and psychiatrist on February 24, 2014. He was prescribed Sertraline 100mg and Haloperidol 2mg. [Doc. #1, p.49]

Plaintiff was also seen at sick call on March 18, 2014, April 29, 2014, May 14, 2014, June 17, 2014, and July 3, 2014. [Doc. #1, p.221-246] He received x-rays in October 2014. [Doc. #1, p.149]

He was treated at sick call again on December 26, 2014, and January 2, 2015, and he was referred to Dr. Singleton on January 9, 2015. [Doc. #12, p.7-11] He was treated again on January 29, 2015, February 6, 2015, February 19 and 27, 2015. [Doc. #12, p.16-20, 23] Notes from a sick call on March 5, 2015, indicate that Plaintiff was seen again and returned his cane. [Doc. #12, p.24]

As of January 25, 2015 and February 17, 2015, Plaintiff was again on restricted duty status. [Doc. #12, p.16, 20]

*Law and Analysis*

1.  **Medical Care**

A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see Reeves v. Collins, 27 F.3d 174, 176-77 (5th Cir. 1994)(applying Farmer to medical care claim).

To state a claim for deliberate indifference, a Plaintiff must allege that the defendants refused to treat him, purposefully gave him improper treatment, ignored his medical complaints, "or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006)(internal quotation marks and citation omitted). Plaintiff has failed to make any such non-conclusory allegations.

**Even unsuccessful treatment**, medical malpractice, and acts of negligence do not constitute deliberate indifference, ***nor does a prisoner's disagreement with his medical treatment***, absent exceptional circumstances. See id. According to the 200+ pages submitted by Plaintiff with his original complaint, plus the exhibits submitted on April 16, 2015, with his objection to a report and recommendation, it is evident that Plaintiff has received regular, ongoing medical treatment for his various complaints. He has been prescribed Mobic, Ultram, Tramadol, among other medications, and he has received a back x-ray. Defendants have issued him several "lay-ins" and duty status limitations. Plaintiff clearly disagrees with the diagnosis and/or treatment prescribed, but such a disagreement does not state a claim for relief.

Likewise, any disagreement Plaintiff has regarding which limitations should have been included in his duty status does not rise to the level of a constitutional violation. See eg., Thomas v. Carter, 593 Fed.Appx. 338 (5th Cir. 2014)(unpublished); Joseph v. LeBlanc, 2014 WL 2560615 (M.D.La. 6/6/14).

2.  **Verbal abuse**

Plaintiff claims of verbal abuse or being insulted by Nurse Gaskil fail to raise a federal constitutional claim. A plaintiff can successfully invoke §1983 only when his federal statutory or constitutional rights have been violated. The Fifth Circuit has

7

held that verbal abuse or harassment does not amount to an Eighth Amendment violation. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)(citing Bender v. Brumley, 1 F.3d 271, 274 n. 4 (5th Cir. 1993)).

3.  **Winn Correctional Center**

Plaintiff names WNC as a defendant. Federal Rule of Civil Procedure 17(b) provides the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether Winn has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. Art. 24. A review of the Louisiana Secretary of State's corporation database suggests that Winn is not a corporation, and, as such, not a juridical person. Plaintiff has failed to allege or establish otherwise.

4.  **Work Assignment / Duty Status**

Plaintiff was ordered to amend to provide the name of the defendants that allegedly violated his duty status of August 13, 2013; the dates on which his duty status of 8/13/13 was ignored; what he was required to do that violated the duty status; and, what injury Plaintiff suffered as a result of having to work beyond his limitations. Plaintiff's amended complaint was non-responsive.

[Docs. #17, 15] Plaintiff provided random legal terms, quotations, and citations instead of the simple facts requested.

Although prison work requirements that compel inmates to perform physical labor that is beyond their strength, endangers their lives, or causes undue pain, constitutes cruel and unusual punishment, see Jackson v. Cain, 864 F.2d. 1235 (5th Cir. 1989)(citing Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977), Plaintiff has failed to provide facts indicating when/where/how/who required him to perform labor beyond his duty status limitations, and what he was required to do that exceeded the limitations. Plaintiff claims that his kitchen job exceeded his duty status, but this allegation is conclusory. Moreover, on January 20, 2014, Plaintiff was removed from the kitchen and placed on restricted duty based on his medical/mental health needs. [Doc. #1, p.10]. He was also placed on restricted duty in January 2015. Plaintiff is currently on a restricted duty status at this time, and does not claim that he is being forced to work in violation of that duty status.

*Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's claims be **DENIED** and **DISMISSED WITH PREJUDICE** under 28 U.S.C. §1915(e)(2)(B) and 1915A.

*Objections*

Under the provisions of 28 U.S.C. §636(b)(1)(c) and

9

Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this _19th_ day of May, 2015.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE